**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DENNIS COMPEAU,

        Petitioner,               Case No. 2:16-cv-10558
                                            HON. ARTHUR J. TARNOW

v.

KENNETH ROMANOWSKI,

        Respondent.
_____/

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS**

      This matter is before the Court on Petitioner Dennis Compeau's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Compeau challenges his conviction for assault with intent to commit criminal sexual conduct involving penetration and attempted kidnapping. He challenges the conviction on four grounds: 1) the trial court erred in considering him a fourth habitual offender and departing upwards when resentencing; 2) his sentence is a departure unsupported by substantial and compelling reasons; 3) his attorney provided ineffective assistance by failing to pursue an alibi defense; and 4) a suggestive photo array violated his due process rights. Respondent, through the Attorney General's Office, has filed an answer in opposition to the petition arguing that all of the claims are meritless. The Court denies the petition and declines to issue a certificate of appealability.

I.      **Background**

Compeau's convictions arise from the assault and attempted kidnapping of Michelle Krappe in Mount Pleasant, Michigan.

On April 2, 1998, Krappe was walking home at 8:00 p.m. when she noticed a white van driving nearby. The van followed her for a short distance and eventually pulled over. The driver of the van, who she later identified as Compeau, asked Krappe if she needed a ride and she declined. He made a few more statements, but Krappe continued walking home. She heard the driver turn off the van and saw him get out. He approached, touched her arm, and began screaming obscenities at her before attempting to lead her to the van. [ECF No. 10-12 at 139.] Krappe screamed for help. The attacker punched her in the face, splitting her lip, but she was eventually able to break free and saw people coming toward her to help. The attacker got back into the van and drove away.

Shortly after the incident, Krappe drew a freehand picture of the man. The following day she assisted a police sketch artist with a computer composite of the attacker. When presented with a photo array, she identified Compeau as the man who attacked her. Compeau's attorney was present for the photo array.

Robert and Barbara Elmore were in the neighborhood at the time the attack occurred. Sometime after 8:00 p.m., they noticed two people in front of a parked white van. Mr. Elmore heard what he thought was a "slap or a smack" and both heard a woman screaming for help. [ECF No. 10-12 at 199.] Mrs. Elmore began screaming at the man

to get away from the woman and ran toward the two people. The attacker got into the van and drove away, so Mr. Elmore ran to his vehicle to chase the van. When the chase was unsuccessful, Mr. Elmore returned to the scene and called the police.

Mount Pleasant police officer Cary Murch was called to the Elmore's house that night. He took a statement from Krappe and observed that she had a cold compress on her lip. After speaking with Krappe and the Elmores, he issued a "be on the lookout" ("BOL") for an individual who was 5'8" tall and 180 pounds, with blue eyes and long, blond, curly hair, who was driving a white Ford van.

The next day, another officer stopped a white van driven by a man with long, blond, curly hair and called Officer Murch to the scene, believing that the driver matched the description in the BOL. Officer Murch went to the site of the traffic stop and saw Compeau in the back seat of the officer's car.

The officer then took Compeau to the police station, where he was interviewed by Detective David Tuma. Compeau told Tuma that he never left his girlfriend's trailer on April 2, 1998.

Earlier in the evening on April 2, 1998, John W. McKenzie, Jr., who lives in Remus, observed his tenant's teenage daughter speaking with someone in a white van sometime between 5:00 and 6:00 p.m. He watched the van pull away after 30 to 40 seconds, but noticed that it was driving very slowly and doing "head checks" to look at the teenager and her friend. [ECF No. 10-13 at 393.] He noticed the van again between 6:00 and 7:00 p.m. that evening and once more at about 9:30 p.m. At the final sighting,

Mr. McKenzie was suspicious and attempted to follow the van, but was unsuccessful. He never called the police.

Mr. McKenzie's neighbor, Fred Nostrant, also noticed the white van in the neighborhood between 5:00 and 5:30 p.m. on April 2, 1998. He testified that he saw the van later, between 7:30 and 7:45 p.m. that evening, and called the police between 8:10 and 8:20 p.m. He indicated that he spoke to Mr. McKenzie about the van before he made the call. Mr. Nostrant further testified that the police report, indicating that he had seen the van at 8:20 p.m., was inaccurate.

Compeau was arrested and booked in the Isabella County Jail on April 3, 1998. In August of 1998, Compeau's girlfriend, Linda Richardson, was charged with helping him attempt to escape from the jail.

In December of 1998, a jury in the Isabella County Circuit Court found Compeau guilty of assault with intent to commit criminal sexual conduct and attempted kidnapping. On December 30, 1998, he was sentenced as a fourth habitual offender to concurrent prison terms of 25 to 50 years for the assault conviction and 20 to 40 years for the attempted kidnapping conviction.

Compeau filed an appeal of right in the Michigan Court of Appeals, raising the following claims: (i) the trial court erred by allowing the bailiff's testimony; (ii) the trial court erred by allowing evidence of Compeau's escape attempt; and (iii) his sentence was disproportionately severe. The Michigan Court of Appeals affirmed Compeau's conviction. *People v. Compeau*, 244 Mich. App. 595 (Mich. Ct. App. 2001). He filed an

application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Compeau*, 465 Mich. 861 (2001).

In May 2002, Compeau filed a habeas petition in this Court, raising the following claims:

> I. The trial court violated his Sixth and Fourteenth Amendment rights by admitting the testimony of a court bailiff; and
>
> II. The trial court abused its discretion by admitting evidence of his plan to escape from jail.

The Court denied habeas relief. *Compeau v. Birkett*, No. 2:02-cv-71944 (E.D. Mich. May 21, 2003).

In 2013, Compeau filed a motion to correct an invalid sentence and motion for relief from judgment. In his motion for invalid sentence, he argued that his current sentence was based upon inaccurate information in his presentence report. In his motion for relief from judgment, he raised the following claims:

> I. Appellate counsel did not provide effective assistance where counsel failed to raise meritorious constitutional claims;
>
> II. Appellate counsel did not provide effective assistance when counsel failed to place a witness on the stand to rebut Mr. Nostrant; and
>
> III. The trial court abused its discretion by allowing an unduly suggestive photo array lineup.

The trial court granted the motion to correct an invalid sentence, but denied the motion for relief from judgment. [ECF No. 10-18.] Specifically, the court concluded that the

court improperly relied on a set-aside 1996 conviction when it enhanced his sentence as a fourth habitual offender.

Compeau was resentenced on June 30, 2014. The Isabella County Trial Court adopted the original sentencing, finding that the sentencing guidelines remained the same, irrespective of the initial mistake on the pre-sentence report. Compeau was again sentenced as a fourth habitual offender and ordered to serve 25 to 50 years on the assault conviction and 20 to 40 years on the attempted kidnapping conviction.

In December 2014, Compeau filed a delayed application for leave to appeal in the Michigan Court of Appeals, setting forth the following claims:

I. The trial court erred in departing upwards on resentencing because he was a third, and not a fourth, habitual offender;

II. The sentence is unsupported by substantial and compelling reasons and is disproportionate;

III. He was denied effective assistance of counsel when his attorney failed to present an alibi defense; and

IV. His due process rights were violated when the trial court allowed an unduly suggestive photo array line up.

The court denied the motion. *People v. Compeau*, No. 325301 (Mich. Ct. App. May 14, 2015). Compeau filed an application for leave to appeal to the Michigan Supreme Court, but the court denied his application. *People v. Compeau*, 498 Mich. 949 (2015). He filed the instant action on February 16, 2016, setting forth the same four claims.

II.     **Standard of Review**

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA").  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court find a state

7

court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Put another way,

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's

8

resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Discussion

#### A. Resentencing Claims

Compeau's first two claims challenge his resentencing. First, he argues that the trial court should have resentenced him as a third, rather than a fourth, habitual offender. Second, he claims that his sentence is disproportionate to the crime and was based on inaccurate information. The Court will address each argument in turn.

##### 1. Third Habitual Offender

On June 3, 2014, the trial court granted Petitioner's motion to correct sentence, concluding that the court had improperly relied on a set-aside 1996 absconding charge when it enhanced his sentence as a fourth habitual offender. However, the court then adopted the original sentence, stating the following:

> [E]ven with the removal of the absconding charge, because of some errors that were originally made when they did the original sentencing guidelines and ran your guidelines and so forth, nothing's changed. The numbers are with the numbers are, they're the same. And I find that there has been nothing changed with - - even with the removal of the absconding charge. I

9

> don't see anything in the record that would deviate from the Judge's original rational[e] in sentencing.
>
> \* \* \*
>
> I do find that you're being sentence[d] as a habitual offender[,] 4th degree and there is a compelling and substantial reason do deviate from the guidelines as I indicated.

[ECF No. 10-19 at 5.] Although the Michigan Court of Appeals denied Compeau's second appeal on timeliness grounds and did not address the sentencing issue on its merits, the Court addressed the sentencing issue in Compeau's direct appeal, stating that Compeau "could have been sentenced to life imprisonment" because his criminal history "included four felonies and four misdemeanors," in addition to the fact that he was "on parole when he committed the instant offenses." *Compeau*, 244 Mich. App. at 599.

Pursuant to Michigan law, "[i]f a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies," the court may sentence the individual to life imprisonment. Mich. Comp. Laws § 769.12. Here, as explained by the Michigan Court of Appeals, Compeau had been convicted of at least three felonies, excluding the absconding charge. Accordingly, Compeau's sentence is within the statutory limits and therefore not subject to federal habeas review. *Townsend v. Burke*, 344 U.S. 736, 741 (1948).

Even if the trial court had misinterpreted the state sentencing guidelines, "it is a matter of state concern only." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). While the Sixth Circuit Court of Appeals' recent holding in *United States v. Adams*, 2017 WL 4532099 (6th Cir. Oct. 11, 2017), calls into question whether habeas relief may be

warranted where the misinterpretation is based on the sentencing judge's reliance upon erroneous information, Compeau has not established a factual basis for such an error in this case. Compeau is therefore not entitled to habeas relief on his claim that he should have been sentenced as a third habitual offender.

### 2. Proportionality of Sentence

Petitioner next argues that the sentence he received is disproportionate to the crime. There exists no right to strict proportionality in sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). However, the Eighth Amendment prohibits "extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (Kennedy, J. concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). The Sixth Circuit has held that "a sentence within the statutory maximums set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62-63 (6th Cir. 1995); *see also Hutto v. Davis*, 454 U.S. 370, 374 (1982) ("[F]ederal courts should be reluctant to review legislatively mandated terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare.") (internal quotations omitted). Here, Compeau's sentence does not exceed the statutory maximum for his offenses and there is no extreme disparity between his crimes and sentences so as to offend the Eighth Amendment.

### 3. Sentence Based on Accurate Information

A sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no

opportunity to correct. *Townsend,* 334 U.S. at 741; *see also United States v. Tucker,* 404 U.S. 443, 447(1972) (citing *Townsend* ); *United States v. Sammons,* 918 F.2d 592, 603 (6th Cir.1990) (defendant must have a meaningful opportunity to rebut contested sentencing information); *Adams*, 2017 WL 4532099 at *2 ("'[A] violation of due process exists when a sentencing judge relies upon erroneous information.'") (quoting *United States v. Wilson*, 614 F.3d 219, 255 (6th Cir. 2010)). To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information. *United States v. Polselli,* 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v. Jabe,* 803 F.Supp. 70, 81 (E.D. Mich. 1992).

Compeau asserts that the trial court relied on an error when sentencing him as a fourth habitual offender. While the trial court did initially err by including in its calculation an offense for which he had not been convicted, that error was corrected upon resentencing. As noted by the resentencing court, even considering the initial mistake, there was nothing in the record that would require deviation from the original sentence. Irrespective of the absconding charge, Compeau still had three other felonies. Compeau has therefore not demonstrated that the trial court relied on false information when resentencing.

Further, if Compeau had determined that the court erred in this respect, he had a meaningful opportunity to rebut the contested sentencing information, but did not do so at the resentencing hearing. Habeas relief is not warranted on the basis of the state trial court's sentencing decision.

### C. Ineffective Assistance of Counsel Claim

To establish that he or she received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

Here, Compeau argues that his trial attorney was ineffective because he failed to pursue an alibi defense. A brief timeline of events is helpful in explaining Compeau's theory. Nostrant and McKenzie, who live near each other in Remus, both reported seeing a suspicious white van on April 2, 1998. Nostrant called 911 to report the van at 8:23 p.m. and the Elmores called 911 to report the attack on Krappe at 8:44 p.m. However, the BOL was issued at 8:41 p.m. Compeau asserts that because the BOL was issued before the Elmore's call to 911, the call was actually placed at 8:34 p.m. He also asserts that Nostrant saw his van in Remus at 8:20 p.m., making it impossible for him to have driven to Mt. Pleasant and committed the crime. Upon Compeau's urging during the trial, his counsel called Nostrant as a witness. Nostrant testified that he called thirty to forty-five minutes after seeing the van.

Compeau then argued to the trial court that his girlfriend, Linda Richardson, should be called as a witness to impeach Nostrant because she had information about what time he saw the van. However, Richardson was awaiting trial on her part in Compeau's escape attempt and her attorney indicated that if she were called to testify, she would exercise her Fifth Amendment right against self-incrimination.

Compeau also asserts that trial counsel should have called Mecosta County Sheriff's Deputy Casey Nemeth, to rebut Nostrant's testimony. He bases his argument on a Mecosta County police report, apparently obtained by Ms. Richardson, that may have referenced Compeau being in Remus at 8:20 on April 2, 1998. The police report was not made part of the record.

14

Throughout the trial, the court gave Compeau ample opportunity to discuss his possible defense strategies without the jury present. During one such exchange, Compeau's trial counsel explained his rationale for not pursuing an alibi defense, noting that the time of the Elmores' 911 call was computer generated and it is more likely that the time of the BOL was an approximation. He further explained that he did not think that Nostrant or Richardson would be helpful witnesses, as was borne out by Nostrant's testimony that he saw the van at 7:30 p.m., leaving plenty of time for Compeau to drive to Mt. Pleasant before the Elmores' 8:44 p.m. 911 call. Notably, it is unlikely that Richardson would have provided any helpful testimony whatsoever, and could have opened the door to questions about the escape attempt. *See Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (the reviewing court is "required not simply to give the attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons [counsel] may have had for proceeding as they did." (internal quotations omitted)).

As addressed by the Michigan Court of Appeals in Compeau's first appeal, counsel's questioning of witnesses during trial is presumed to be a matter of trial strategy. Moreover, counsel's explanation is entirely reasonable. Instead of pursuing the alibi defense, counsel attempted to cast doubt upon the eyewitness descriptions of the white van and Compeau's appearance. It is reasonable to surmise that trial counsel made this decision as part of a strategy to limit the discussion of Compeau's escape attempt at the expense of pursuing a somewhat flimsy alibi defense, dependent upon the jury disbelieving multiple data points as well as Nostrant's testimony. *See, e.g., Hutchison v.*

15

*Bell*, 303 F.3d 720, 749 (6th Cir. 2002) (explaining that counsel's decision to omit evidence was a matter of trial strategy). Moreover, even if Compeau could demonstrate that his trial counsel's performance was deficient, he is unable to show that he was prejudiced. He has offered "no evidence, beyond his assertions, to prove what the content of" Richardson and Nemeth's testimony would have been, and therefore "cannot show that he was prejudiced by its omission." *Clark v. Waller*, 490 F. 3d 551, 557 (6th Cir. 2007). In sum, there is no indication that trial counsel was ineffective and the Michigan Court of Appeals' dispensation of this matter was reasonable.

### D. Photo Array Claim

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois,* 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness led to a substantial likelihood of an irreparable misidentification. *Neil v. Biggers,* 409 U.S. 188 (1972). Courts consider five factors in determining the reliability of identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *Id.* at 199–200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See United States v. Wade,* 388 U.S. 218, 240, n. 31(1967). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill,* 967 F.2d 226, 230 (6th Cir. 1992).

Compeau is not entitled to habeas relief because he has failed to show that Krappe's photo array identification was the result of suggestive procedures. Here, Detective Tuma was not able to arrange a line-up because of "the unique physical characteristics of Mr. Compeau," specifically, his height, weight, hair color, and hair texture. [ECF No. 10-3 at 4.] The prosecution therefore moved the trial court to allow the use of a photo line-up. On April 13, 1998, the trial court viewed the photo array, consisting of six men, and concluded it was fair. The court authorized its use, with the direction that the prosecution mask the height indicators behind two of the six men. Compeau's attorney requested that he be present when the photo array was presented to Krappe, which the court also allowed.

Compeau has not demonstrated that Krappe's identification was the result of suggestive procedures. The trial court concluded that the array was a fair representation and the record indicates that Compeau's counsel was present for the identification. This finding was upheld when the court denied Compeau's motion for relief from judgment. [ECF No. 10-18.]

Even if Compeau could demonstrate that the array was impermissibly suggestive, he cannot show, under the totality of the circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification. Krappe sketched a picture of her attacker the night that the assault took place, then met with a police sketch artist the next day, where she described a man who looked similar to Compeau. As stated by the trial court, the "victim clearly identified defendant and his 'unique' features." [ECF No. 10-18.] These factors support a finding that an independent basis existed for Krappe's identification of Compeau. *See Robertson v. Abramajtys,* 144 F.Supp. 2d 829, 847 (E.D.Mich. 2001.). As such, Compeau is not entitled to habeas relief on this claim.

IV. **Certificate of Appealability**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

V.	**Conclusion**

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED. Furthermore, the Court DENIES a certificate of appealability. The Court finds Petitioner may proceed on appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: October 31, 2017

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on October 31, 2017, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant